UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JONATHAN GOULD,

               Plaintiff,         06 Civ. 2436 (RWS)

   -against-                       OPINION

LIGHTSTONE VALUE PLUS REAL ESTATE
INVESTMENT TRUST,

               Defendant.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiff

    GERSTEN SAVAGE LLP
    600 Lexington Avenue
    New York, NY 10022
    By:  Steven R. Popofsky, Esq.

    Attorneys for Defendant

    JOSEPH & HERZFELD LLP
    757 Third Avenue, 25th Floor
    New York, NY 10017
    By:  Charles Joseph, Esq.
         Diane Hester, Esq.

**Sweet, D.J.**

    Defendant Lightstone Value Plus Real Estate Investment Trust, Inc. ("Lightstone" or the "Defendant") has moved under Rule 12(b), F. R. Civ. P., to dismiss the complaint of plaintiff

Jonathan Gould ("Gould" or the "Plaintiff"). For the reasons set forth below, the motion is granted.

**Prior Proceedings**

Gould filed his complaint on March 29, 2006 and his amended complaint on July 21, 2006 alleging two causes of action, quantum meruit and unjust enrichment.

The instant motion was heard and marked fully submitted on January 25, 2007.

**The Amended Complaint**

Gould is an experienced real estate executive with particular expertise in the field of real estate development trusts ("REITs"). Lightstone is owned and controlled by David Lichtenstein ("Lichtenstein"), who has described himself as one of the premier real estate investors in the country. (Amended Complaint ("Am. Compl.") ¶¶ 1, 5, 9, 10).

Beginning in the fall of 2002, Gould, individually and through various of his entities, began a business relationship with Lichtenstein and his entities. They worked closely with one another and did not normally require written contracts in advance

of beginning work.  From time to time they did enter into such contracts, and on one such occasion the written agreement was not executed until most of Gould's work was complete around a year after that work had begun.  (Am. Compl. ¶¶ 11-12).

In early 2004, Lichtenstein asked Gould to lead the creation of Lightstone, which was intended to be a type of real estate investment trust known as a "private REIT."  Private REITs are publicly registered but unlisted (i.e., non-traded).  (Am. Compl. ¶ 13).

Gould became primarily responsible for getting the project off the ground, making it a reality, and putting it in position to raise hundreds of millions of dollars from individual investors throughout the country.  He was the only person involved with Lightstone to have substantial REIT experience and his presence and background and expertise bolstered defendant's stature as it organized itself in order to seek funds from investors.  (Am. Compl. ¶ 14).

During almost all of 2004 and the first several months of 2005, Gould worked the equivalent of full days virtually five days a week for almost every week (while continuing his own real estate business and some of his other work for Lichtenstein and his entities as well) supervising the organizing and structuring of

Lightstone. To assist in his work on behalf of Lightstone Gould also provided the services of two individuals associated with his own organization, one of whom was being paid a salary by Gould while performing services for Lightstone as well as for Gould. (Am. Compl. ¶ 15).

As described in the complaint, that work included, among many other things:

> coordinating and refining the entire concept of the REIT; gathering, modeling, and presenting reams of complicated financial data; creating a detailed marketing plan; creating and documenting financial models; hiring, monitoring, and working with an outside due-diligence company; hiring and working with accounting personnel; working closely with outside counsel; recruiting officers and employees; training a wholesale staff; creating a broker-dealer; implementing policies; responding to inquires from and providing information to regulatory agencies including the SEC, the NASD, and the various state blue-sky offices; obtaining financial histories; preparing brochures; and assisting in compliance with many legal and regulatory obligations.

(Am. Compl. ¶ 16).

During that period, Gould was in regular contact, often multiple times per day, with Lichtenstein, who requested, authorized, and was fully aware of the extent of Gould's work. Gould devoted many hours to ensuring the existence and success of

REIT, and was instrumental in contributing to and, indeed, creating the value of the business. (Am. Compl. ¶ 17).

As of the date of the amended complaint, Lightstone had already surpassed $3 million in subscriptions (that figure is now over $20 million); had closed on its first property acquisition; and had declared its first dividend to shareholders. Much of that business success is directly attributable to the groundwork laid by Gould. (Am. Compl. ¶¶ 20-21).

In May of 2005, as the Securities and Exchange Commission ("SEC") approved Lightstone's filing, Lichtenstein directed that Gould be informed that his services were no longer required. (Am. Compl. ¶ 24).

During several conversations over the course of Gould's more than fifteen months of work on the Lightstone project, he and Lichtenstein agreed on a general framework for his compensation. Lichtenstein promised that they would enter into a written agreement whereby Gould would receive an interest in all properties acquired by Lightstone and the right to buy a portion of Lighstone's sponsorship entity. (Am. Compl. ¶ 22).

Despite Gould's requests, and Lichtenstein's promises, and Gould's continued work and services on behalf of Lightstone,

Lichtenstein never prepared or executed a written document memorializing the parties' agreement implementing his promises. (Am. Compl. ¶ 23).

Last year, after awaiting and receiving compensation owed to him in connection with another of his business deals with Lichtenstein, Gould inquired through counsel about formalizing in writing his agreed-upon compensation for the services he had provided to Lightstone. (Am. Compl. ¶ 26).

Defendant's counsel responded by citing an agreement ("the Stonemar Contract") between one of Gould's entities (Stonemar Capital) and a different entity of Lichtenstein's. That separate contract provided that Gould would perform different services to a different entity. (Am. Compl. ¶ 27).

The Stonemar Contract was signed in May of 2004, shortly after Lichtenstein had asked Gould to begin his work on Lightstone, (Am. Compl. ¶ 13), and a clause in the Stonemar Contract expressly stated that Gould's compensation for Lightstone would be governed by a distinct written contract:

> Notwithstanding anything contained in this agreement, ... any participation by the consultant in the 'Lightstone REIT' or [two other transactions] are expressly excluded from this Agreement, and compensation, if any, shall be governed via a separate written

agreement between [the] parties.

(Am. Compl. ¶ 27). Lightstone claims that since no "separate written agreement" had been entered into, Gould was not entitled to any compensation whatsoever.

**The Applicable Legal Standard**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). However, "mere conclusions of law or unwarranted deductions" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in

support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000); accord Eternity Global Master Fund, 375 F.3d at 176-77.

The parties agree that New York law shall govern Plaintiff's claims.

**The Amended Complaint Does Not State a Cause of Action Against Lightstone**

Lightstone has urged that Gould is barred by the Stonemar Contract, to which it was not a party.[1]

The Stonemar Contract directly references Lightstone and specifically contemplates the possibility that Gould might not receive any compensation for work done in connection with Lightstone. It further provides that in the event Gould were to receive compensation, it must be pursuant to a written agreement. (Stonemar Contract, ¶ 4(d)).

---

[1] The parties to the Stonemar Contract were Gould (individually and as the managing member of Stonemar Capital, LLC) and Lichtenstein (as president of the Lightstone Group, an entity distinct from the Defendant in the instant matter).

"If the parties' intent is unambiguously conveyed by the plain meaning of the agreements, then interpretation is a matter of law, and . . . may be resolved by . . . Rule 12(b)(6) dismissal." Crane Co. v. Coltec Indus., Inc., 171 F.3d 733, 737 (2d Cir. 1999) (internal quotation marks omitted). Here, the Stonemar Contract plainly states that compensation for Gould's participation in the Lightstone project, "if any, shall be governed via a separate written agreement between [the] parties."

Extrinsic information, such as Lichtenstein's alleged statements assuring Gould that he would be paid, should be examined only when the language of the contract is ambiguous. W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990) ("An analysis that begins with consideration of extrinsic evidence of what the parties meant, instead of looking first to what they said and reaching extrinsic evidence only when required to do so because of some identified ambiguity, unnecessarily denigrates the contract and unsettles the law."); Zunenshine v. Executive Risk Indem., 1998 U.S. Dist. LEXIS 12699, *9 (S.D.N.Y. 1998) (citing Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998)) ("When a contract is not ambiguous, the court 'should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence.'"). Here, Gould does not even allege ambiguity in the Stonemar Contract.

In D'Accord Financial Services v. Metsa-Serla Oy, the plaintiff entered into a letter agreement with the defendant whereby the plaintiff agreed to find investors and manage the various parts of a transaction, in return, the plaintiff would receive a percentage of the value of the transaction at the closing. 1999 U.S. Dist. LEXIS 1202 (S.D.N.Y. Feb. 8, 1999). According to the complaint, the plaintiff performed all its obligations under the letter agreement, but the transaction never closed. The plaintiff sued for quantum meruit, among other causes of action, seeking to be paid. The court concluded that the plaintiff had failed to state a claim for quantum meruit because "'[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter of the existence of a written contract.'" Id. at *9 (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987)).

In the instant case, though the contract was primarily concerned with a separate transaction, it nonetheless provided that Gould would receive payment only pursuant to a written agreement and specifically contemplated the notion that Gould would receive no compensation for the Lightstone project.

In addition, Lightstone contends that Gould cannot

establish that he had a "reasonable expectation" of further payment for his services in order to prevail on his claim of quantum meruit. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 176-77 (2d Cir. 2005); Utica Alloys, Inc. v. Alcoa Inc., 303 F. Supp. 2d 247, 256 (N.D.N.Y. 2004) ("a plaintiff must have a reasonable expectation of compensation for services rendered, which is critical to the success of a quantum meruit claim."); Metro. Steel Indus. v. Citnalta Constr. Corp., 754 N.Y.S.2d 278, 279 (N.Y. App. Div. 2003) (finding no "basis to sustain plaintiff's claim for recovery in quantum meruit since there is no triable issue as to whether plaintiff performed the services in question with any reasonable expectation of compensation").

The Lightstone public filings with the SEC specifically disclaimed that it was paying Gould any compensation. In its registration statement and subsequent amendments thereto, Lightstone stated: "Our officers will not receive any cash compensation from us for their services as our officers. Our officers are officers of one or more of our affiliates and are compensated by those entities (including our sponsor), in part, for their services rendered to us." (Initial Forms S-11 at 56). Only independent directors - which Plaintiff was not - were to receive $10,000 per year. (Initial Forms S-11 at 56).

Gould has alleged that he was significantly involved in presenting the information to the SEC (Am. Compl. ¶ 15), and in his capacity as Senior Vice President of Acquisitions and a member of the Lightstone board of directors, signed the Initial Form S-11 and five subsequent amendments that contained that disclosure. (Initial Form S-11, at II-8). Thus, any belief that Gould had after July 2004 - the filing date of the Initial Form S-11 - that he would be receiving any compensation from Lightstone would have been unreasonable.

Finally, whatever the effect of the Stonemar Agreement may be as to Lightstone as a possible third-party beneficiary, there is no allegation that Lightstone participated in, or even existed, at the time the understanding between Gould and Lichenstein was reached. If the facts Gould described in the Amended Complaint are actionable at all, they are against Lichtenstein, not Lightstone.

**Conclusion**

For the reasons stated above, Lightstone's motion to dismiss is GRANTED.

It is so ordered.

New York, NY

May 21, 2007

Robert W. Sweet, U.S.D.J.